18210-2150, number 182150, Allen Zeigler v. Dr. Michael Rater. Thank you. May it please the Court, my name is Chip Miller and I represent Allen Zeigler. Good morning. May I reserve two minutes for rebuttal? Yes, you may. Thank you. This is a case, a defamation case, regarding a psychiatrist who performed an independent medical examination. The district court granted Mr. Dr. Rater's motion for summary judgment on one basis alone, and that was on the basis of conditional privilege. No, it simply didn't decide the other issue, right? Correct, Your Honor. There was no implication, it rejected the opinion defense. That's correct, Your Honor, and that's why we have both briefed both issues. Regarding the conditional privilege, Mr. Zeigler concedes that a conditional privilege is appropriate in the circumstance, but believes that it was abused by Dr. Rater. Dr. Rater is an accomplished psychiatrist who is asked to determine a fact. We think of medical opinions and we call them medical opinions, but as the First Circuit understands the word opinion, it is clear that what Atrius wanted, the company that contracted Dr. Rater, was a fact. And the fact that Atrius wanted was whether or not Alan Zeigler was psychologically fit to work and safe to return to the workplace. Dr. Rater – Well, I suggest that what they wanted was Dr. Rater's thoughts about that issue. When you say they wanted a fact, you're not talking about a quantifiable fact. You're not talking about a fact that we can determine in any practical way other than putting him back to work and seeing if he works out all right. Well, Your Honor, I think that facts – you can think of facts on a spectrum. Yeah, this is a mixed fact and opinion, and they wanted the doctor who had accumulated a lot of facts to tell them what he thought. And we can dispute whether the conclusion of that is a statement of fact or a statement of opinion, but I'm not sure we have to get to that in this case. But that's what they wanted. Well, Your Honor, I think that when you look at the main of the opinion cases, the cases that find that the statement is a non-actionable opinion, I think what you find are the vast majority of them are often in – Counsel. Yeah. Judge Salyer said we probably don't have to reach the opinion question. So listen to us. What is your argument on conditional privilege, please?  Two reasons, Your Honor. Number one is that Dr. Rader made his opinion and published his opinion in a reckless manner. That is without reasonable grounds to believe it is true. The only data that Dr. Rader used to change his opinion, if you recall just backing up one step in the facts, Dr. Rader cleared Mr. Ziegler for war after meeting with him twice and conducting a mental status examination, the industry standard. The decision for Dr. Rader to return Mr. Ziegler to work was an extremely important decision that affected the lives and safety of the entire workplace. He did not make it lightly, we can be sure. And when Dr. Rader received only three emails from people he had never met, people he had never spoken with, people who apparently had some personal animus against Mr. Ziegler, he switched his opinion 180 degrees. Even if we thought you're wrong on that, am I right to understand that you can still win if a jury concluded that he acted maliciously? Yes, Your Honor. And the case that I understand that you're making for that he acted maliciously is that effectively he was retaliating against them for having threatened to sue? Is that correct? Well, I think the Massachusetts cases are clear, Your Honor, that... I'm asking what you're arguing. Yes. Am I right to understand that your case for, if we put aside the reckless disregard for the truth and we focus on his ill motive, is the basis for the claim that he was ill motivated, that he was aware that the suit had been threatened? That is certainly one of the bases, Your Honor. What's another basis for the ill motivation part of your argument? Is there any other? Sure. The cases are clear that failure to investigate, failure to, in other words, reckless investigation or failure to investigate the truth can be evidence of malice. It can be some evidence of malice, but in those cases it's usually fairly... If I were to think that if that was your only evidence, the evidence wasn't as extreme as those other cases, could you still win? My understanding is that in your brief you're arguing you can because there was evidence from which a jury could conclude that the ill motivation was he wanted to get back at him because of the threat to sue. Is that right or not right? Well, Your Honor, I think that what I would say is that... He was aware of a threat to sue, wasn't he? He was and he admitted that. Is that not part of your case or it is part of your case? That is the heart of my argument that Dr. Rader was malicious. Okay. I don't think that the court should look at that in isolation. I understand that. You want us to look at that along with how he actually conducted the investigations, the two things together. Yes, Your Honor. But that's what distinguishes it from a claim about reckless disregard for the truth alone is that you have some additional evidence of ill motivation, which is the awareness of the threat to sue. Am I mistaken? That's correct, Your Honor. And I think that it's important to dovetail it or look at it with the motivations of the people writing the three emails because in that sense, Dr. Rader and the three, at least two of the witnesses, if not all three, were joined in their animus against Mr. Rader. I'm sorry. What evidence was apparent to Dr. Rader that the people who wrote those emails were motivated by animus toward your client? If you look at their working relationships with your client, they all seem to be in a situation where their opinions as to concerns about working with him were exactly the sort of thing you would expect colleagues to say. So what's the evidence of animus? The mere fact that they had concerns? No, Your Honor. Dr. Rader testified that he needed to be alert to the possibility that the company, Atrius, was using him as a tool of retaliation. And I think that what one could read, a jury could read, the emails as expressing not only observations about Alan Ziegler's demeanor in the office, but also disdain at his desire to sue the company. Did all three of the employees, were all three of them aware of the threat to sue Harvard Atrius? Your Honor, at least two of the emails, the email from Gene George and the email from Melinda Fontaine, clearly expressed their account of Mr. Ziegler telling them on that last day of work that he intended to sue the company out of frustration for Atrius' lack of action on his behalf. I'm sorry, is there any evidence he did not say that? I mean, if it's an accurate account of what he said, I still am struggling to understand why it shows animus. Well, Your Honor, I think that what Dr. Rader observed in those emails was a layperson's opinions of his psychological state. Yes, so what? All employers rely on feedback from colleagues, even the courts do. Absolutely, Your Honor, but in this case it was the psychiatrist. And the psychiatrist uses data that is accepted in his industry and in his specialty. And that's why I think that his... You're saying a psychiatrist cannot use reports from colleagues of behavior in the workplace in offering thoughts on whether someone is suitable to return to the workplace? Certainly not, Your Honor. Okay, so what are you saying? What I'm saying is that Dr. Rader believed that at the time that he sent... cleared Mr. Ziegler to go back to work, he had all the information he needed to make an accurate psychological psychiatric determination. And then... And he got additional information. Yes, Your Honor, but even Dr. Rader is not suggesting that that information is true. He never argued that that information is true. And so a jury could find that, in the light most favorable of the non-moving party, the jury could find that the emails contained observations of Mr. Ziegler that were untrue. I just want to make sure I didn't make something up in your brief that I thought I read in your brief. I thought you argued, independent of all the other things you've been saying, that there is a basis for finding a malicious intention on the part of Rader because of the different way he conducted the second investigation, the less thorough way, not giving a chance for the employee to come meet with him as he met with him the first time, solely based on emails after learning that he might be sued by this employee. And that from that set of facts, a jury could reasonably conclude that the reason for the more harsh finding that the doctor made the second time was not evidentiary based, but was instead based on a retaliatory motive because he was threatened to sue. Is that right? Yes. Okay, thank you. Um... Yeah, time's up, counsel. Thank you. You do have two minutes reserved. So it might be helpful if you addressed Judge Barron's last question. That seems to be at the heart of your opponent's case. Certainly. May it please the Court, again, for the record, my name is Rebecca Capozzi and I represent Dr. Rader. Obviously not weighting our briefed arguments about protected opinion and... No, but don't spend your time here. But I won't do that today. With respect to this malice piece and ill intent, the standard is whether or not that even if you were to assume or there should be some evidence of bias, ill intent, malice, whatever terminology you use, that that has to be the motivating factor in the publication of the allegedly defamatory statements. And here, Mr. Ziegler is attempting to say that by virtue of this sort of recently learned knowledge of a threat to possibly sue, that that in and of itself is enough, is evidence of malintent, in addition to this sort of radical change in opinion. And the different way the investigation was conducted in resulting in that changed opinion. And I think there's no way of looking at that without pulling back and looking at the full context of the examinations that had taken place over the course of the months preceding the events here. Dr. Rader was not making these decisions in a vacuum.  He received new information by virtue of those three emails that unfortunately reflected that despite... Why didn't he call the employee back in to talk to him after he had done it the first time he talked to him? And that resulted in a less harsh penalty. I'm not saying that he... Couldn't a reasonable jury think, gee, he seemed pretty quick to pull the trigger on that recommendation after learning that that guy might sue him? And if a jury could reasonably think that, couldn't it conclude that the reason he pulled the trigger so quickly was because of a retaliatory motive? And if that's right, that's balanced. It doesn't mean the jury has to find that, but couldn't a reasonable jury come to that conclusion on these facts? I mean, I have two things. This touches a little bit on the recklessness piece. It is not whether he could have made the phone call or whether he was negligent in not making the phone call. It is reckless. It is a... Is that true for the malice inquiry? In other words, if we're trying to figure out what motivated him to act as he did the second time, one possibility is, well, there was evidence that he knew he was being sued. And then you rightly say that's not going to be enough. You're going to have to find that that's the reason he did it. Right. But why couldn't a jury conclude... Well, what makes me think it was the reason he did it is that he pulled the trigger so quickly the second time compared to the first. Why wouldn't that be a reasonable thing for a jury to find? Because I also look at the Stowe case, which I cited in my brief, which was another employment discrimination situation. And when they touched on the issue of malice, the argument was... One of the arguments that had been made by the plaintiff in that case was that the plaintiff had filed, actually filed, not threatened, filed a notice of a claim prior to the publication of the defamatory statement. But there weren't two interactions in that case. Correct. Here there were. Correct. And the differential reaction by the doctor the second time is what I'm asking. Why doesn't that distinguish it from Sophie? In other words, the jury says, all I know is... If it's one thing, if all I know is he had this information and then he behaved a certain way. But now I know he behaved one way the first time when he didn't have the information, which is that he interviewed the employee. And after he got the information the second time, he did not interview the employee. Isn't there another fact that cuts against the inference of differential treatment? The first time the Ziegler was sent to Dr. Rader for the express purpose of a mental health evaluation. That led to the June report. In August, Dr. Ziegler was asked to render an opinion. The employer didn't send Mr. Ziegler to him for an examination. Now certainly, Dr. Rader could have asked for time and permission to conduct an examination, but that's not what he was asked by the employer to do. And it may have been better professional practice for him to have asked to call him in. But the first time and the second time weren't comparable worth it. And I thank you, Your Honor. That's sort of what I was about to say. Isn't there also another distinction? He was out of work at one point, but he had returned to work, and the circumstances around the delivery of the opinion were different. Meaning the impact that it would have or just the backdrop? Yeah, he was back, and he would continue to be back at work unless the employer said, no, time out, we don't want you back. The doctor had authorized his return to work. He did return to work, and a disruption ensued. And so the situation had changed. The doctor was given anecdotal evidence and was asked in the form of the three emails and was asked for a further opinion. He had all the medical records at that point. Correct. Am I right that the first time the doctor's recommendation was a suspension for him to take anger management classes and stay out of work until they're completed? Essentially, the results, sorry. And the second time it was what? The second time was actually, excuse me, the second time to which Judge Barrett is referring is actually the third time because it was the second time after he completed three or four weeks of the anger management classes when Dr. Ziegler reevaluated the situation and said, okay, now you can come back to work. And then the third time, the doctor's conclusion is, the recommendation was what from the doctor? Well, the third time was the recommendation that he needed to be back out based on what had happened when he returned to work. And was there a duration or anything that he put on that, the doctor? I want to say it was another three months. I believe that's correct. And just to clarify again the facts so that we're all on the same page here, it was, in fact, he was asked to evaluate Mr. Ziegler in June based on the observations of agitation and anger towards his supervisor. They wanted to make sure he was fit to return to work. Dr. Rader evaluates him based on the medical records and his evaluation.  Seeks some anger management and learns some skills in order to address your employment situation or alternatively ask your employer to change things up. That period of time passes. He goes back in and sees Dr. Rader again. After that evaluation, Dr. Rader issues an oral recommendation back to Atria saying he's okay to return to work. He's made developments. He has a different outlook. He's received training, et cetera. He's approved to return back to work by Atria. And it's on that first day that these interactions and concerning interactions happen with his coworkers that are then reported to Dr. Rader. And Atria says, what do we do now? And does Ziegler know that Rader has been asked to do that third assessment? My understanding is that what was told to Mr. Ziegler when he left was escorted out of the office that day. It was that they were going to do an investigation into what happened. I don't know if he was specifically told we're going to ask Dr. Rader. So there's nothing in the record indicating that Ziegler asked Rader for a meeting? No, absolutely not. This was based purely on Atria's and the previous relationship that said, you know, you've already rendered these opinions. You have the history. Here's what happened. What do we do? He already had the history. He had the complete medical records at that point. Correct. I would just say in summary, and I believe this is briefed, we are of the position that the evidence is insufficient to show, with respect to malice, that even if you were to assume some form of bias on the part of Dr. Rader, having learned of a possible threat to sue for malpractice, mind you, there was no actual he had received no filing, there was no actual evidence that any suit was actually going to occur, that there is insufficient evidence that that was the motivating factor in publishing the allegedly defamatory statement. The motivating factor. Correct? Correct. Not a.  The. Correct.  Okay. Your time is up. Counsel. Thank you. I'd like to note that Dr. Rader admitted, when I asked him at his deposition, whether he should find another psychiatrist to make an opinion after he learned, Dr. Rader learned that he was being sued. And Dr. Rader responded, you do raise a good point. Where I asked to interview and examine Mr. Ziegler again, it's got to be fair to Mr. Ziegler, there probably should be another person at this time. Yeah. So the thing about the three months, you know, Dr. Rader borrowed Mr. Ziegler from the workplace for three months. And your client chose to leave, right? He didn't reapply in three months. That's right, Your Honor, because he needed to. And he chose instead to sue. Well, he needed to make money, Your Honor. He was unpaid during that time. Tell me when a lawsuit gives you instant money. Correct, Your Honor. He went and saw another job. Okay. Could you answer Judge Selya's, do you have an answer to Judge Selya's observation about why, that I've been called time one and time two, the two evaluations, are not comparable? The suggestion is they're not comparable, because if you look at it from the perspective of what the doctor was asked to do, the doctor was asked to meet with him the first time, and the doctor was not asked to meet with him the second time. I don't think that's accurate. Atrius did not direct Dr. Rader to conduct his investigation in any particular manner. Dr. Rader chose the method. He chose the method of meeting and reviewing the records and deciding not to ask for employee observations. And that is why there is no difference between the standards that Dr. Rader followed in all of the opinions that he rendered. He was going by his standard, which is the psychiatric mental status examination, as the key source of information. Thank you. Thank you both.